## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMORY UNIVERSITY,
dba Emory University Hospital Midtown
550 Peachtree Street, NE
Atlanta, GA  30308,

HOSPITAL GENERAL MENONITA (AIBONITO),
Calle José C. Vázquez
Aibonito, PR  00705,

HOSPITAL GENERAL MENONITA (CAYEY),
Bo. Rincón Sector Lomas Carr. #14
Cayey, PR  00737,

INTEGRIS BASS BAPTIST HEALTH CENTER,
600 S. Monroe
Enid, OK 73701,

                        Plaintiffs,

            v.

XAVIER BECERRA, Secretary, United States
Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, D.C.  20201,

                        Defendant.

Case No.

## COMPLAINT

The above-captioned Plaintiff-hospitals (collectively, "the Hospitals"), by and through their undersigned attorneys, bring this action against defendant Xavier Becerra, in his official capacity as the Secretary ("the Secretary") of the Department of Health and Human Services ("HHS"), and state as follows:

## INTRODUCTION

1.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* (the "Medicare Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et*

*seq.* The Medicare payment issue in this action is how inpatient hospital days should be counted for Medicare disproportionate share hospital ("DSH") payment purposes when the Medicare beneficiary patient was eligible for Medicare, and enrolled in a Medicare Part C plan (as opposed to participating in fee-for-service Medicare), during the inpatient stay.

2.      The Hospitals seek judicial review of the final orders issued by the Provider Reimbursement Review Board ("Board" or "PRRB") remanding the Hospitals' Medicare appeals at issue to the Secretary's contractors in accordance with an agency issuance known as Centers for Medicare & Medicaid Services ("CMS") Ruling 1739-R ("the Ruling") (Exhibit A) for recalculation of their DSH payments. The PRRB's remand orders, which followed the PRRB's finding that it had jurisdiction over the appeals at issue, are the final agency decisions of the Secretary for purposes of judicial review.

3.      The PRRB's remand decisions must be set aside because, *inter alia*, the Ruling unilaterally, arbitrarily, and otherwise unlawfully (a) declares the Hospitals' long-pending jurisdictionally-proper PRRB appeals moot, (b) remands them for recalculation of the DSH payments at issue using criteria that were set forth in a proposed notice-and-comment rule that purports to have retroactive effect but that has not yet been finalized while, at the same time, prohibits reopening, which is the action necessary to issue the recalculated payments, and (c) declares that the PRRB lacks jurisdiction over the appeals while, at the same time, requiring the PRRB to find that it has jurisdiction before remanding the appeals. Further, there are no provisions in the Ruling that provide for review of the final payment calculations, as required by Medicare's statutory appeal provisions. Nor does the Ruling establish any definitive time period for the contractors to act. Simply put, the Ruling requires remands for recalculated

payments that apparently will never be made, thus effectively extinguishing the Hospitals' statutory appeal rights for the payments at issue.

4.     The Ruling's stated purpose is "to resolve in an orderly manner pending administrative appeals of the Part C days SSI fraction issue" in light of the decision of the United States Supreme Court in *Allina Health Services v. Price ("Allina II")*, 863 F.3d 937 (D.C. Cir. 2017), *aff'd sub nom, Azar v. Allina Health Services*, 139 S. Ct. 1804 (2019), by requiring the Secretary's contractors to "recalculate the provider's DSH payment adjustment in accordance with CMS's forthcoming rule."  Exhibit A at 7-8.  But the remands required under the Ruling are premature, in part because CMS has not yet issued the final rule setting forth the actual payment criteria to be used when making the recalculated payments.

5.     Moreover, even if the Secretary issues the payment criteria to be used when making the recalculated payments in a final rule, the remands required under the Ruling unlawfully prejudice the Hospitals by limiting (if not depriving them entirely of) their statutory right under 42 U.S.C. §1395oo and other authorities to (a) challenge the effect of the finalized payment criteria on the DSH payments at issue in the remanded appeals by prohibiting the issuance of recalculated DSH payments that the Hospitals could appeal to the PRRB, and (b) seek interest for their incorrect DSH payments, some of which extend back more than 15 years (the fiscal periods at issue all predate October 1, 2013, but some go back much further in time). The Ruling is also unlawful procedurally because it was not adopted using notice-and-comment rulemaking, as required by statute, despite its substantive impact on the Hospitals' Medicare payment rights, and has an unlawful retroactive effect.

6.     Because the Ruling is unlawful procedurally and substantively, the Hospitals seek an order (a) setting aside the provisions of the Ruling that declare the Hospitals' appeals to the

PRRB moot and require the PRRB to remand their *Allina II* claims to the Secretary's contractors for recalculation of the Hospitals' DSH payments, (b) reversing the PRRB's remand orders, and (c) instructing the PRRB to reinstate the Hospitals' appeals.

### JURISDICTION AND VENUE

7.     This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §§1331 (federal question) and 1361 (mandamus).

8.     Venue lies in this judicial district under 42 U.S.C. §1395oo(f) and 28 U.S.C. §1391.

### PARTIES

9.     At all times relevant to this action, the Hospitals were qualified as Medicare-participating, general acute-care hospital-providers under the federal Medicare program pursuant to the Medicare Act.  The Plaintiff-Hospitals in this action are listed below with their unique Medicare provider numbers and their cost reporting periods at issue in this action, as set forth in their administrative appeals:

      a.  Emory University, d/b/a Emory University Hospital Midtown, Medicare Provider Number 11-0078, FY 2013.

      b.  Hospital General Menonita (Aibonito), Medicare Provider Number 40-0018, FYs 2002, 2003 and 2004.

      c.  Hospital General Menonita (Cayey), Medicare Provider Number 40-0013, FYs 2003 and 2004.

      d.  Integris Bass Baptist Health Center, Medicare Provider Number 37-0016, FY 2011.

The PRRB appeals at issue are listed in Exhibit B hereto with the date of the final remand orders.

10.     Defendant Xavier Becerra is the Secretary of HHS.  The Secretary, the federal official responsible for administration of the Medicare program, has delegated that responsibility to CMS.  Before June 14, 2001, CMS was known as the Health Care Financing Administration

("HCFA").  In this Complaint, the Hospitals refer to the agency as CMS, even for events arising before June 14, 2001.

## GENERAL BACKGROUND OF THE MEDICARE PROGRAM

11.     The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.  42 U.S.C. §1395c.  The Medicare program is federally funded and administered by the Secretary through CMS and its contractors.  42 U.S.C. §1395kk; 42 Fed. Reg. 13,282 (Mar. 9, 1977).

12.     CMS implements the Medicare program, in part, through the issuance of official Rulings.  *See* 42 C.F.R. §401.108.  In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes numerous other interpretative rules implementing the Medicare program, which are compiled in one or more CMS Manuals.  The Secretary also issues other subregulatory documents to implement the Medicare program, which generally do not have the force and effect of law.

13.     The Medicare Act, at 42 U.S.C. §1395hh(a), prohibits the application of any rule or policy that establishes or changes a substantive legal standard governing the payment for service unless it is promulgated by the Secretary by notice-and-comment rulemaking.   In addition, the Medicare Act specifies that where a final rule "is not a logical outgrowth of a previously published notice of proposed rulemaking . . ., such provision shall be treated as a proposed regulation and shall not take effect."  42 U.S.C. §1395hh(a)(4).  *Allina II*, 139 S. Ct. at 1816.

14.     The Medicare program is divided into five parts: A, B, C, D, and E.  Part A of the Medicare program provides for coverage and payment for, among others, inpatient hospital services on a fee-for-service basis.  42 U.S.C. §§1395c *et seq*.  Part A services are furnished to Medicare beneficiaries by "providers" of services, including the Hospitals, that have entered into

written provider agreements with the Secretary, pursuant to 42 U.S.C. §1395cc, to furnish hospital services to Medicare beneficiaries.

15.     CMS pays providers participating in Part A of the Medicare program for covered services rendered to Medicare beneficiaries through "Medicare Administrative Contractors" ("MACs"), which are agents of the Secretary.  Each Medicare-participating hospital is assigned to a MAC.  42 U.S.C. §1395h.  The amount of the Medicare Part A payment to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS.

16.     Part C of the Medicare program addresses how Medicare beneficiaries can obtain their Medicare benefits through a health plan, as opposed to under fee-for-service Medicare. Medicare beneficiaries that join Part C plans still have Medicare, but they get their coverage and payment for hospital services from the plan, and not fee-for-service Medicare.

### THE MEDICARE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEM

17.     Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the hospital inpatient prospective payment system ("IPPS") to reimburse hospitals, including the Hospitals, for inpatient hospital operating costs.  Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals.  Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient determined at the time of discharge from the inpatient stay, subject to certain payment adjustments.  One of these adjustments is the Medicare "disproportionate share hospital" or "DSH" payment.  *See* 42 U.S.C. §1395ww(d)(5)(F).  This Complaint addresses DSH payments based on the rules that were in place before October 1, 2013.

### THE MEDICARE DSH ADJUSTMENT

18.     Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments.  42 U.S.C. §1395ww(d)(5)(F).  Congress enacted the DSH adjustment in recognition of the relatively higher costs associated with providing services to low-income patients.  These higher costs have been found to result from the generally poorer health of low-income patients.  The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing services to their low-income patients.

19.     There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" (42 U.S.C. §1395ww(d)(5)(F)(i)(I)) and the less common "Pickle method" (42 U.S.C. §1395ww(d)(5)(F)(i)(II)).  The Hospitals' DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on the hospital's "disproportionate patient percentage" ("DPP").  42 U.S.C. §1395ww(d)(5)(F)(v) and (vi).

20.     The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days").  Thus, the two fractions serve as a "proxy" to determine low-income patients, rather than having CMS count the actual number of such patients.

21.     The first fraction, referred to as the "Medicare/SSI fraction," accounts for inpatients who are current Medicare Part A recipients and also entitled to benefits under SSI, a federal low-income supplement.   The Medicare/SSI fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) *were entitled to benefits under Part A of this subchapter* and were entitled to supplementary security income benefits (excluding any State

7

> supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) *were entitled to benefits under Part A of this subchapte*r.

42 U.S.C. §1395ww(d)(5)(F)(vi)(I) (emphasis added).  The Medicare/SSI fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.  The terms "Medicare" and "SSI," and "ratio," "fraction," "proxy" and "percentage" are all used interchangeably throughout various sources to describe the fraction set forth in 42 U.S.C. §1395ww(d)(5)(F)(vi)(I).  For consistency, the term "Medicare/SSI fraction" is used herein.

22.     The second fraction, referred to as the "Medicaid fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were *eligible* for medical assistance under a State plan approved under title XIX, but who were *not entitled to benefits under Part A of this title*, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C.  §1395ww(d)(5)(F)(vi)(II) (emphasis added).  The Medicaid fraction, therefore, is intended to account for hospital inpatients "who were not entitled to benefits under [Medicare] Part A," but who were "eligible for medical assistance" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital.

## MEDICARE PART C

23.     Section 4001 of the Balanced Budget Act of 1997 ("BBA"), Pub. Law No. 105-33, added a new Part C to Title XVIII of the Social Security Act to establish the Medicare+Choice program to allow Medicare beneficiaries to obtain their Medicare benefits through a private health plan, instead of through fee-for-service Medicare.  The Medicare

Prescription Drug, Improvement, and Modernization Act of 2003, Pub. Law No. 108-173, replaced the Medicare+Choice program with the new Medicare Advantage program, also under Part C. For consistency, all plans authorized under Part C are referred to herein as "Part C plans."

24. A Medicare beneficiary can elect to receive Medicare benefits *either* through the original fee-for-service program under Medicare Part A, *or* through enrollment in a Part C plan, but not both simultaneously. 42 U.S.C. §1395w-21(a)(1); 42 C.F.R. §422.50; *see also* 63 Fed. Reg. 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B . . . may elect to receive benefits through *either* the existing Medicare fee-for-service program *or* a Part C [Medicare Advantage] plan.") (emphasis added). In order to be eligible to enroll in a Part C plan, an individual must be entitled to benefits under Part A. 42 U.S.C. §1395w-21(a)(3)(A). Once a Medicare beneficiary individual enrolls in a Part C plan, the beneficiary "is entitled to elect to receive benefits under [the Medicare statute] . . . through enrollment in a [Medicare Advantage] plan under this part [C]" and, thus, is no longer entitled to payment of benefits under Medicare Part A. 42 U.S.C. §1395w-21(a)(1)(B).

25. The Secretary makes Part C payments to the Part C plan "instead of the amounts which (in the absence of the contract) would otherwise be payable under parts A and B of this subchapter for items and services furnished to the individual." 42 U.S.C. §1395w-21(i)(1); *see also* 63 Fed. Reg. 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B . . . may elect to receive benefits through either the existing Medicare fee-for-service program or a Part C plan."). It is the responsibility of the Part

C plan to pay the amount due to providers for the services provided to Medicare beneficiaries enrolled in the Part C plan.

26.     Thus, payments for Part C enrollees are made under Part C, rather than under Parts A or B.  42 U.S.C. §1395w-21(a)(1)(B).  Accordingly, Medicare patients who elect to receive Medicare benefits through enrollment in a Part C plan are no longer "entitled to benefits under part A," because they are not entitled to have payment made under part A.  *See* 42 U.S.C. §426(c) (defining entitlement to benefits under Part A as "entitlement to have payment made under, and subject to the limitations in, part A") and 42 U.S.C. §1395d(a) (stating that the benefits provided under Medicare Part A "consist of [an individual's] entitlement to have payment made on his behalf" for services covered under Part A).

## HOW THE SECRETARY HAS ACCOUNTED FOR PART C DAYS IN THE MEDICARE/SSI FRACTION AND THE MEDICAID FRACTION

27.     When a hospital provides inpatient services to a Part C plan enrollee, these inpatient days are referred to as "Part C days" for DSH purposes.  Prior to 2003, it was the Secretary's policy and practice not to include Part C days in the Medicare/SSI fraction.  *Allina Health Services v. Sebelius ("Allina I")*, 746 F.3d 1102, 1106 (D.C. Cir. 2014) (Before May 2003, "the Secretary treated Part C patients as *not* entitled to benefits under Part A.").

28.     Consistent with that long-standing practice, in the Federal fiscal year ("FFY") 2004 (FFYs start on October 1 and end the next September 30) IPPS Proposed Rule, which CMS published in the Federal Register in May 2003, the Secretary "propos[ed] to *clarify*" that Part C days "*should not be included in the Medicare fraction*."  68 Fed. Reg. 27,154, 27,208 (May 19, 2003) (emphasis added).  In that proposed rule, CMS reasoned that "once a beneficiary has elected to join a Medicare Advantage plan, that beneficiary's benefits are no longer administered

under Part A." *Id.*  CMS also proposed to permit hospitals to count inpatient days for Medicaid-eligible Medicare Part C plan enrollees in the numerator of the Medicaid fraction.  *Id.*

29.     The Secretary did not act on this proposal in the FFY 2004 IPPS Final Rule.  *See* 68 Fed. Reg. 45,346, 45,422 (August 1, 2003).  The Secretary also did not address this proposal in the FFY 2005 IPPS Proposed Rule, which was published in the Federal Register in May 2004.  Despite not addressing the proposal in the FFY 2005 IPPS Proposed Rule, and in a complete reversal of the policy in the FFY 2004 IPPS Proposed Rule, in the FFY 2005 IPPS Final Rule, CMS "adopt[ed] a policy" to include Part C days in the Medicare/SSI fraction, and exclude these days from the numerator of the Medicaid fraction, and stated that it was "revising" its regulations to reflect this policy effective October 1, 2004.  69 Fed. Reg. 48,916, 49,099 (August 11, 2004).  The Secretary's sole explanation for this 180-degree reversal was that Part C plan enrollees "are still, in some sense, entitled to benefits under Part A." *Id.*  But contrary to the Secretary's assertion, CMS did not "revise" the DSH regulation at that time to include Part C days in the Medicare/SSI fraction.  Nor did the agency implement that new policy at that time.

30.     Thereafter, in Change Request 5647, Transmittal No. 1311 (Jul. 20, 2007) at 8, CMS stated that "[p]atients who are enrolled in Medicare Advantage . . . should also be included in the Medicare fraction."  With an implementation date of January 7, 2008, the change request directed that "hospitals . . . begin to submit 'no pay' bills to their Medicare contractor for the MA beneficiaries they treat, in order for these days to be *eventually* captured in the DSH . . . calculations." *Id.* at 1 (emphasis added).  CMS revised the Medicare Claims Processing Manual to state: "[H]ospitals may go back and submit claims with discharge dates on or after October 1, 2006 (FY 2007), *so that SSI data for FY 2007 and beyond will include MA [i.e., Medicare Advantage or Medicare Part C] patient days.*" *Id.* at 2 (emphasis added); *see also* Medicare

Claims Processing Manual (CMS Pub. 100-04) Ch. 3 §20.3, (requiring hospitals to submit informational only bills to "ensure that these days are included in the SSI [fraction] for Fiscal Year 2007 and beyond").

31.    In the FFY 2008 IPPS Final Rule, which CMS published in the Federal Register in August 2007, the agency stated that it had "inadvertently" failed to revise the regulation in 2004 and was doing so at that time to conform to the alleged 2004 "policy change."  72 Fed. Reg. 47,130, 47,384 (August 22, 2007) (amending portions of the DSH regulation to include in the numerator and denominator of the Medicare/SSI fraction days relating to patients who are "entitled to Medicare Part A *(or Medicare Advantage (Part C)).*"  *Id.* at 47,411 (amending §412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added).  By revising the DSH regulation in the FFY 2008 IPPS Final Rule, without first explaining the rationale for doing so in the FFY 2008 IPPS Proposed Rule, the Secretary did not meet the notice-and-comment provisions of the APA.

32.    In the FFY 2014 IPPS Proposed Rule, which was published in the Federal Register in May 2013, CMS presented its proposal to "readopt" the 2004 rule (with the 2007 revisions), to attempt to satisfy the APA's notice-and-comment rulemaking requirements for FFY 2014 and subsequent FFYs.  78 Fed. Reg. 27,486, 27,578 (May 10, 2013).  CMS asserted in the FFY 2014 IPPS Final Rule that the agency was, indeed, "readopting" the 2004 rule (allegedly codified in 2007).  78 Fed. Reg. 50,496, 50,614 (August 19, 2013).   This new rule applied only prospectively.

### LITIGATION ABOUT HOW THE SECRETARY HAS ACCOUNTED FOR PART C DAYS IN THE MEDICARE/SSI FRACTION AND THE MEDICAID FRACTION

33.    The Secretary's 2004 change in policy (effective with the start of FFY 2005) has been subject to several legal challenges.  In *Northeast Hospital Corporation v. Sebelius*, 657 F.3d 1 (D.C. Cir. 2011), a hospital appealed the application of the new policy of including Part C

days in the Medicare/SSI fraction retroactively to the hospital's DSH payments for FFYs 1999–2002.   The D.C. Circuit held that CMS had changed its practice and policies concerning including Part C days in the Medicare/SSI fraction in 2004 and the 2004 policy could not be applied retroactively to periods before the October 1, 2004 effective date.  *Id*. at 17.

34.     In *Allina I*, *supra*, which involved FFY 2007, the D.C. Circuit held that CMS had failed to follow the APA and the Medicare Act when attempting to adopt a regulation in 2004 that suggested Part C inpatient days will be (or should be) included in the Medicare/SSI fraction and excluded from the Medicaid fraction, because it was not a "logical outgrowth" of the proposed rule suggesting the opposite.  *Allina I*, however, arguably left open the possibility that CMS could attempt to "repair" the identified deficiencies in the 2004 <u>rulemaking</u> process by implementing the new policy through an <u>adjudicatory</u> process.  *Allina I* was remanded to the Secretary for further proceedings.

35.     On remand in *Allina I*, the December 2, 2015 final "Decision of the [CMS] Administrator" purported to explain why the 2004 rule change had been properly supported by the administrative record of the rulemaking and why, in any event, the "change" in CMS policy was not actually a substantive modification of policy, but rather a clarification of the agency's interpretation, which could be applied even in the absence of notice-and-comment rulemaking.  *See Allina Health Servs., et al.*, *v. Sebelius*, No. 1:10-cv-01463-RMC, CMS Adm'r Dec. (D.D.C. Dec. 2, 2015).  In response, the *Allina I* plaintiff-hospitals filed a new lawsuit in this Court to challenge this 2015 CMS Administrator's final decision.

36.     Meanwhile, the *Allina* hospital plaintiff group had already filed a separate lawsuit in this Court, *Allina II*, to challenge the Secretary's application of the 2004 rule (already vacated by *Allina I*) to the hospitals' DSH payments for FFY 2012.  The hospitals in *Allina II* contended

that the Secretary violated two independent provisions of the Medicare Act by including Part C days in the hospitals' Medicare/SSI fractions for FFY 2012. The D.C. Circuit agreed, not only reiterating that the 2004 rule was invalid but also stating that "HHS violated the Medicare Act when it changed its reimbursement adjustment formula without providing notice and opportunity for comment." *Allina II*, 863 F.3d at 938.

37. Significantly, the D.C. Circuit also suggested that the Secretary could not "repair" the deficiencies in the 2004 <u>rulemaking</u> process by implementing the new policy through an <u>adjudicatory</u> process, stating, contrary to the earlier decision in *Allina I,* that the Secretary "could not circumvent this requirement [to conduct notice and comment rulemaking] by claiming that it was acting by way of adjudication rather than rulemaking." *Id.* at 945. The D.C. Circuit also noted that, because its prior ruling vacated the 2004 rule, "HHS can no longer rely on the 2004 interpretation." *Allina II*, 863 F.3d at 939.

38. The Secretary petitioned for both panel rehearing and rehearing *en banc* in *Allina II*, both of which petitions were denied. On April 27, 2018, the Secretary filed a petition for certiorari to the Supreme Court of the United States, and the Supreme Court granted the Secretary's petition on September 27, 2018. On June 3, 2019, the Supreme Court affirmed the decision of the D.C. Circuit in *Allina II*. *Azar v. Allina Health Servs*., 139 S. Ct. 1804 (2019).

39. On remand from the Supreme Court and the D.C. Circuit, this Court entered judgment in favor of the plaintiffs in *Allina II*, vacated the Medicare/SSI fractions to be used in calculating the plaintiffs' DSH payments, and remanded the case to the Secretary for further proceedings consistent with the law established by the *Allina II* case. *See* Order, *Allina Health Servs. v. Azar*, No. 14-cv-1415 (TJK) (D.D.C. Sept. 4, 2019), ECF No. 58 at 2.

40.     Although *Allina II* was remanded to the Secretary, numerous actions are still pending in this Court, which have been consolidated under *In Re: Alina II-Type DSH Adjustment Cases*, No. 19-mc-0190 (D.D.C.).  The Secretary's motion for remand and the plaintiff hospitals' opposition is currently pending in that consolidated case.

## THE PROPOSED RULE TO ADDRESS *ALLINA*

41.     In response to *Allina II*, on August 6, 2020, CMS issued a proposed rule entitled "Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage," 85 Fed. Reg. 47,723 (August 6, 2020) ("the Proposed Rule").  The purpose of the Proposed Rule is to "create a policy governing the treatment of days associated with [Medicare] beneficiaries enrolled in Medicare Part C for discharges occurring prior to October 1, 2013, for purposes of determining" DSH payments in light of the decision of the Supreme Court in *Allina II*.  *Id.* at 47,723.

42.     The Proposed Rule asserts that, as a result of *vacatur* of the 2004 rule, CMS has no rule governing the treatment of Part C days and must, under *Allina II*, engage in retroactive rulemaking.  *Id.* at 47,424–25.  The Proposed Rule thus fails to account for the pre-2004 rule that still governs the treatment of Part C days in the DSH payment in light of the 2004 rule's *vacatur*.  *Id.* at 47,725.  Also, the Proposed Rule asserts retroactive rulemaking is (a) necessary to comply with the statutory requirement to calculate Medicare DSH payments, and (b) in the "public interest" because, absent retroactive rulemaking, CMS "would be unable to calculate and confirm proper DSH payments for the time periods before FY 2014 . . . ."  *Id.*

43.     The Proposed Rule has not yet been finalized.  If finalized as proposed, the new rule would effectively reinstate CMS's vacated 2004 rule and expand its retroactive effect to cover all dates of service prior to October 1, 2013, including dates of service prior to the October

15

1, 2004 effective date of the 2004 rule.  If that occurs, the Hospitals expect to challenge that final rule for several reasons, including that it (a) is inconsistent with the plain reading of the DSH Statute, which requires Part C Days to be excluded from the Medicare/SSI Fraction and included in the numerator of the Medicaid Fraction (for dually-eligible Medicare Part C enrollees), and (b) does not meet the statutory requirements for retroactive rulemaking.

## CMS RULING 1739-R

44.     On August 17, 2020, as a direct result of the Proposed Rule, and in clear coordination with it and reliance on it, CMS issued Ruling CMS-1739-R without using notice-and-comment rulemaking.  This was improper under 42 U.S.C. §1395hh(a) because the Ruling establishes the procedural policy by which the Hospitals' DSH payments will be changed and, thus, requires the Secretary to use notice-and-comment rulemaking.

45.     The Ruling (Exhibit A at 2) states that it applies *only* to appeals that include the *Allina II* issue "regarding patient days with discharge dates before October 1, 2013 that arise from Notices of Program Reimbursement ("NPRs") that are issued before CMS issues a new final rule to govern the treatment of patient days with discharge dates before October 1, 2013." Thus, the Ruling purports to have an improper retroactive effect, including for dates of service prior to the October 1, 2004 effective date of the 2004 rule.

46.     The Ruling (Exhibit A at 8) requires the PRRB to remand jurisdictionally-proper appeals that include the *Allina II* issue to the applicable MACs to "recalculate the provider's DSH payment adjustment in accordance with CMS's forthcoming rule":

> If the administrative tribunal finds that the applicable jurisdictional and procedur-
> al requirements are satisfied for a given claim on the Part C day DSH issue and
> that any NPR that is the basis for the claim issued before CMS's forthcoming fi-
> nal rule or that arise from an appeal based on an untimely NPR under 42 U.S.C.
> 1395oo(a)(1)(B) or (C) and any subsequently issued NPR for that fiscal year pre-
> dates the new final rule then the appeals tribunal will issue a brief written order,

> remaining <u>each such claim that qualifies for relief under the Ruling</u> to the appro-
> priate Medicare contractor for calculation of the DSH payment adjustment for the
> period at issue pursuant to the forthcoming rule.

Exhibit A at 7-8 (underlining added). Thus, before issuing a remand, the PRRB must find that

the claim meets "applicable jurisdictional requirements." However, the Ruling states:

> By this Ruling, the Administrator provides notice that <u>the PRRB</u> and other Medi-
> care administrative appeals tribunals <u>lack jurisdiction over the Part C days issue</u>
> <u>for years before FY 2014</u> as to any appeals arising from NPRs from that period
> that pre-dates the forthcoming rule or that arise from an appeal based on an un-
> timely NPR under 42 U.S.C. 1395oo(a)(1)(B) or (C) and any subsequently issued
> NPR for that fiscal year pre-dates the new final rule.

Exhibit A at 6-7 (underlining added). The Ruling does not explain how the PRRB can find it has

jurisdiction over a claim over which, under the Ruling that the PRRB is required to follow, the

PRRB explicitly "lacks jurisdiction."

47.     The Ruling adds:

> CMS's action eliminates any actual case or controversy regarding the hospital's
> previously calculated SSI and Medicaid fractions and its DSH payment adjust-
> ment and thereby renders moot each properly pending claim in a DSH appeal in-
> volving the issue resolved by the Supreme Court in *Allina*, provided such claim
> otherwise satisfies the applicable jurisdictional and procedural requirements of
> section 1878 of the Act, the Medicare regulations, and other agency rules and
> guidelines for appeal.

Exhibit A at 8-9. The Ruling further states that "this Ruling is not an appropriate basis for a new

reopening of any final determination of the Secretary or a Medicare contractor or of any decision

by a reviewing entity with respect to the Part C days DSH issue." Exhibit A at 9. But without a

reopening, the MACs do not have a process to use to issue a revised determination. And without

a revised determination, there is no payment to appeal to the PRRB. Thus, the Ruling apparently

will terminate the Hospitals' statutory right to appeal their DSH payments to the PRRB while

prohibiting MACs from taking the actions necessary to issue recalculated payments that the

Hospitals could then appeal.

48.     Even more pernicious, no revisions to the payment calculations for the Hospitals to appeal are anticipated as a result of the Ruling.   When the MACs made their initial determinations, which are the subject of these appeals, the MACs likely included the Medicare Part C days in the Medicare fractions, and not the Medicaid fractions, just as the MACs are anticipated to do as a result of the as-yet unpublished retroactive rule, which will control the new calculations.   If so, there would be no change to the payments at issue.

49.     Because remands made under the Ruling provide for no further review by the PRRB or the Secretary, they are final agency determinations for purposes of judicial review.[1]

50.     The Ruling states that its remand procedure is necessary "to resolve in an orderly manner pending administrative appeals of the Part C days SSI fraction issue."   Exhibit A at 7. With regard to the numerous cases currently pending in this Court on the *Allina II* issue, the Ruling adds:

> Hospitals have filed numerous PRRB appeals challenging the treatment of patient days associated with patients enrolled in Medicare Advantage plans with discharge dates before the effective date of the FY 2014 IPPS/LTCH PPS final rule. . . . In many such cases, the PRRB has granted expedited judicial review (EJR). After the Supreme Court's decision, the United States District Court for the District of Columbia granted the Secretary's motion to consolidate most of these cases (*in re: Allina II-Type DSH Adjustment Cases*, 19-mc-190).   Prior to consolida-

---

[1]  On November 20, 2020, CMS issued a Technical Direction Letter ("TDL") to all MACs about how to implement the Ruling.  *See* Exhibit C.  The TDL notes (at 2) that (a) "some providers have expressed concern that 1739-R will deprive them of appeal rights concerning their remanded appeals" and (b) the purpose of the TDL is to "clarify" that "such  hospitals will not be precluded by the Ruling from seeking further review under the Medicare statute for the Part C days issue by filing an administrative appeal."   The TDL states that hospitals will be able to appeal because MACs "will issue a revised NPR in connection with remanded appeals pursuant to the forthcoming final rule."  *Id*.  However, the issuance of a revised NPR by a MAC would violate the Ruling which states "this Ruling is not an appropriate basis for a new reopening of any final determination of the Secretary or a Medicare contractor or of any decision by a reviewing entity with respect to the Part C days DSH issue" (Exhibit A at 9) because a MAC can issue a revised NPR only through the reopening process.  Because the TDL is subservient to the Ruling, the TDL does not provide assurance that the Hospitals will, in fact, continue to be able to pursue their statutory appeal rights for their remanded appeals.

tion, many such cases had been stayed pending the outcome of the *Allina* proceedings.  <u>The Secretary has since moved for a voluntary remand of these consolidated cases so that he can re-examine the claims in light of the Supreme Court's decision and take further action as necessary to comply with the applicable legal standards announced therein.</u>  The Secretary has determined that he has no choice but to engage in a new rulemaking to resolve the issue.

Exhibit A at 6 (emphasis added).  Thus, the Ruling requires remand based on a mere proposed rule in anticipation of finalization.

51.     A regulation, 42 C.F.R. §401.108, states that CMS Rulings are binding on all CMS components.  Another regulation, 42 C.F.R. §405.1867, states that, "[i]n exercising its authority to conduct proceedings . . . the PRRB must comply with all the provisions of Title XVIII of the Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the Administrator as described in §401.108."

52.     Since publication of the Ruling, the PRRB has remanded numerous appeals challenging the 2004 rule to various MACs.  These remand decisions generally state that, although the PRRB has jurisdiction over the appeals, the PRRB is compelled by the Ruling to order remand.

## THE MEDICARE APPEALS PROCESS

53.     Under the Medicare program, each hospital's MAC is required to analyze and audit the hospital's annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year.

54.     If a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of

receiving its NPR (or any revised NPR).  42 U.S.C. §1395oo.  In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction and procedure.

55.     The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision.  42 U.S.C. §1395oo(f)(1); 42 C.F.R. §§405.1875 and 405.1877.  The Secretary has delegated his authority under the statute to review PRRB decisions to the CMS Administrator.  Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

56.     The PRRB lacks the authority to adjudicate the validity of the Secretary's regulations and CMS Rulings.  42 C.F.R. §405.1867.  Thus, when a hospital is entitled to a PRRB hearing, the hospital may request that the PRRB determine whether it has the authority to decide the question of law or regulations relevant to the appeal.  42 U.S.C. §1395oo(f)(l).  If the PRRB determines that the legal issues raised are outside the scope of its own authority, it must certify the case for "expedited judicial review" or "EJR."  *Id*.  In that event, the hospital has exhausted its administrative remedies, the Secretary's determination is final, and the hospital may commence a civil action for judicial review of the final determination of the Secretary.  *See* 42 U.S.C. §1395oo(f)(1); 42 C.F.R. §405.1842.  An EJR determination is not subject to review by the Secretary or the CMS Administrator but, rather, allows the hospital to proceed directly to court.

57.     A final decision of the PRRB, including a jurisdictional dismissal, is subject to judicial review.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §1877(a).  A hospital may obtain judicial

review by filing suit within 60 days of receipt of the Secretary's final administrative decision, or an EJR determination, in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia.  42 U.S.C. §1395oo(f).  A hospital may also seek judicial review if the PRRB fails to timely render an EJR determination.  *Id*.  In any of these actions, the Secretary is the proper defendant.  *See* 42 C.F.R. §421.5(b).  Under 42 U.S.C. §1395oo(f)(2), interest is to be awarded in favor of a hospital that prevails in an action brought under 42 U.S.C. §1395oo(f).  Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

58.     Judicial relief is also available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right.  *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

59.     Reopenings of MAC final determinations are permitted pursuant to 42 C.F.R. §405.1885.  However, a change of legal interpretation or policy by CMS in a regulation or ruling, even if made in response to judicial precedent, is not a permissible basis for a reopening. 42 C.F.R. §405.1885(c)(2).

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

60.     Under 42 U.S.C. §1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA.  Under the APA, a "reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law." 5 U.S.C. §706(2)(A).  Furthermore, a "reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be…in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. §706(2)(C).

61.    Additionally, a "reviewing court shall…hold unlawful and set aside agency action, findings, and conclusions found to be…without observance of procedure required by law."  5 U.S.C. §706(2)(D).  The APA dictates rulemaking procedural requirements, specifically the requirement that the agency provides notice of proposed rulemaking, that the agency affords interested parties an opportunity to comment on the proposed rulemaking, and that the agency considers the relevant matters presented.  5 U.S.C. §553.

## PROCEDURAL BACKGROUND

62.    This action arises from four (4) PRRB appeals challenging the Hospitals' Medicare DSH payments for various fiscal years on the grounds that (a) the Medicare/SSI fractions that CMS unlawfully used to calculate those payments improperly included Part C days in the numerator and/or denominator, and (b) the Medicaid fractions that CMS unlawfully used to calculate those payments improperly excluded Medicaid-eligible Part C days from the numerator.  The Hospitals appealed this legal question by filing timely in accordance with 42 U.S.C. §1395oo, thus having jurisdictionally-valid PRRB appeals.

63.    In three letters dated March 26, 2021, April 26, 2021, and May 7, 2021, the PRRB remanded the Hospitals' appeals at issue to their MACs "pursuant to Ruling CMS-1739-R" for "recalculation of the DSH payment adjustment."  *See* Exhibit B.  As a result, the PRRB closed these appeals and removed them from its docket.  The effect of the PRRB's remand orders would be to allow the MACs to use an as-yet non-existing final rule to recalculate the Hospitals' DSH payments.  Because the CMS Administrator did not review the PRRB's remand orders, they are final agency actions for purposes of judicial review.

64.     Under the Ruling, the Hospitals have no clear right following the remands to obtain review of the MAC's new determinations or to obtain relief on their remanded appeals as to the proper treatment of Medicare Part C days in their DSH calculations.

65.     In a separate decision dated April 23, 2021 (Exhibit D), the Board found that it lacked jurisdiction to hear the appeal of the DSH Part C Days issue from three revised NPRs for two of the Hospitals: (1) for Hospital Menonita (Cayey) (Provider No. 40-0013), for its cost reporting periods ending March 31, 2002, and March 31, 2003, and (2) for Hospital Menonita (Aibonito) (Provider No. 40-0018), for its cost reporting period ending March 31, 2003.  Exhibit D at 3-5.  These hospitals had appealed the DSH Part C Days issue from their original NPRs for the same fiscal periods and the PRRB found it had jurisdiction over the appeals of this issue from the hospitals' original NPRs.  *Id*. at 3.  The hospitals appealed the DSH Part C Days issue from their revised NPRs for the same fiscal periods and asked the PRRB to incorporate the appeal of the revised NPRs into the pending appeals of the original NPRs because doing so "did not introduce any new issues" into the pending appeals.  The PRRB held that it does not have jurisdiction over the appeal of the DSH Part C Days issue from the revised NPRs because "there is no evidence" that DSH Part C Days "were adjusted in the respective RNPRs."  *Id*.  The PRRB's dismissal lacks a factual predicate because the hospitals' appeal of the DSH Part C Days issue from their revised NPRs was not the hospitals' initial appeal of the DSH Part C Days issue for the fiscal periods at issue.  Rather, the hospitals merely added the appeal of the DSH Part C Days issue from their revised NPRs into their currently-pending and jurisdictionally proper appeals of the DSH Part C Days issue from their original NPRs for the same fiscal period.  The PRRB's dismissal of the DSH Part C Days issue from these appeals from the revised NPRs for lack of jurisdiction was improper because they did not appeal any new issues.

## THE REMAND PROCESS IN THE RULING PREJUDICES THE HOSPITALS

66.     By remanding the Hospitals' DSH payments before issuing the final rule setting forth the criteria that the MACs will be using to recalculate those payments, the Ruling deprives the right of the Hospitals to challenge the DSH payments at issue and seek statutory interest. Although the Hospitals will have the separate right to challenge the final rule, the Hospitals may not be able to pursue that challenge with regard to the payments at issue, which the Hospitals have the statutory right to appeal.

67.     Also, remand is premature until the final rule is issued.  Hospitals should have the opportunity to review the recalculation criteria in the final rule before deciding whether to challenge the remand.  This is precisely what happened when CMS issued a previous ruling, CMS Ruling 1498-R.  CMS included in that ruling the specific Medicare payment criteria to be applied by the MACs when recalculating the hospitals' DSH payments, which the hospital-plaintiffs challenged in this Court.

68.     Moreover, even if the Secretary issues the payment criteria to be used when making the recalculation in a final rule, the remands required under the Ruling unlawfully prejudice the Hospitals by limiting (if not depriving them entirely of) their statutory right under 42 U.S.C. §1395oo and other authorities to (a) challenge the effect of the finalized payment criteria on the DSH payments at issue in the remanded appeals by prohibiting the issuance of recalculated DSH payments that the Hospitals could appeal to the PRRB, and (b) seek interest for their incorrect DSH payments, some of which extend back more than 15 years (the fiscal years at issue all predate October 1, 2013).  The Ruling is also unlawful procedurally because it was not adopted using notice and comment rulemaking, as required by statute, despite its substantive impact on the Hospitals' Medicare payment rights, and is unlawfully retroactive.

69.     The remands issued pursuant to the Ruling are final determinations of the Hospitals' rights and are ripe for review by this Court under 42 U.S.C. §1395oo(f).  This action is timely-filed under 42 U.S.C. §1395oo(f).

## CAUSES OF ACTION

## COUNT I

### Judicial Review Under the APA and the Medicare Act
### (Decision is Contrary to Law)

70.     The Hospitals hereby incorporate by reference paragraphs 1 through 69 herein.

71.     The Ruling improperly and prematurely remands the appeals at issue to the applicable MACs for recalculation of their DSH payments using payment criteria that have not yet been adopted in a notice-and-comment rule.

72.     The provisions of the Ruling depriving the Board of jurisdiction over otherwise jurisdictionally valid appeals, and declaring appeals moot and requiring the PRRB to remand them to the MACs are invalid and must be set aside as inconsistent with 5 U.S.C. §706(2), 42 U.S.C. §§1395oo(a) and (f)(1), 1395hh(a)(2) and (e), and other authorities.  The PRRB's remand decisions are similarly invalid and must be set aside.

73.     The provisions of the Ruling declaring the Hospitals' claims moot, and the PRRB's reliance on these provisions in its remand decisions, are arbitrary, capricious, not based upon substantial evidence, and otherwise contrary to law.  The issuance of the proposed rule has not rendered the Hospitals' appeals "moot" or eliminated "any actual case or controversy."  *See* Ruling at 8.  This is because CMS is proposing to adopt retroactively the precise policy that the Hospitals' PRRB appeals are challenging.

74.     Moreover, even if the Secretary issues the payment criteria to be used when making the recalculation in a final rule, the remands required under the Ruling unlawfully

prejudice the Hospitals by limiting (if not depriving them entirely of) their statutory right under 42 U.S.C. §1395oo and other authorities to (a) challenge the effect of the finalized payment criteria on the DSH payments at issue in the remanded appeals by prohibiting the issuance of recalculated DSH payments that the Hospitals could appeal to the PRRB, and (b) seek interest for their incorrect DSH payments, some of which extend back more than 15 years (the fiscal years at issue all predate October 1, 2013).  In ordering remand, the PRRB explicitly found that it "has jurisdiction . . . under the provisions of 42 U.S.C. § 1395oo(a)."  Nothing in §1395oo or any other statute authorizes CMS to divest the Hospitals of the appeal rights granted to them, or the PRRB of the jurisdiction conferred to it, by §1395oo.

75.     The Ruling is also unlawful procedurally because it was not adopted using notice-and-comment rulemaking, as required by statute, despite its substantive impact on the Hospitals' Medicare payment rights, is unlawfully retroactive, and improperly based on the Proposed Rule.

76.      As a result of the foregoing deficiencies, the Hospitals will suffer economic harm because their DSH payments will likely be lower than those to which they are entitled under the law as interpreted by this Court, the D.C. Circuit, and the United States Supreme Court.

77.     Based on the foregoing, the Hospitals are entitled to an order declaring the Secretary's remand instructions in the Ruling to be unlawful and providing for other relief, and declaring the Proposed Rule unlawful to the extent it prejudices the Hospitals' statutory appeal rights.

## COUNT II

### Judicial Review Under the APA and the Medicare Act
### (Decision is Arbitrary and Capricious)

78.     The Hospitals hereby incorporate by reference paragraphs 1 through 77 herein.

79.    The Ruling is arbitrary, capricious, in violation of the Medicare Act and/or otherwise in violation of the law, in violation of 5 U.S.C. §706(2)(A), because it (a) precludes the Hospitals from being able to challenge the payments at issue and obtain interest on any underpayment, (b) improperly and prematurely remands these appeals to the applicable MACs for recalculation of their DSH payments using payment criteria that have not yet been adopted in a notice-and-comment rule, (c) unlawfully applies a procedural policy that was required to have been adopted using notice-and-comment rulemaking, but was not, and (d) unlawfully purports to have retroactive effect.   Under 42 U.S.C. §1395oo, the Hospitals have the statutory right to challenge their Medicare DSH payments and obtain interest.

80.    The Ruling, and the remand decisions applying it, are also arbitrary and capricious as applied to periods prior to October 1, 2004 in that the Secretary does not provide any explanation for the differential treatment in regards to appeals for these earlier years. Following his loss in the *Northeast Hospital* decision, the Secretary settled hundreds of cases addressing the Part C issue over the course of many years by instructing his contractors to include the contested Part C days in the numerator of the Medicaid fraction.  By changing course at this late moment, the Secretary's Ruling has created a situation where similarly-situated parties are treated dissimilarly, which is arbitrary and capricious agency action.  *See Transactive Corp. v. United States,* 91 F.3d 232, 239 (D.C. Cir. 1996) (finding agency action arbitrary when it treats seemingly similar situations differently without explanation of the factual differences justifying dissimilar treatment).

81.    As a result of the foregoing deficiencies, the Hospitals will suffer economic harm because their DSH payment will likely be lower than those to which they are entitled under the law as interpreted by this Court, the D.C. Circuit, and the United States Supreme Court.

82.     Based on the foregoing, the Hospitals are entitled to an order declaring the Secretary's remand instructions in the Ruling to be unlawful and providing for other relief, and declaring the Proposed Rule unlawful to the extent it prejudices the Hospitals' statutory appeal rights.

### COUNT III

### Judicial Review Under the APA and the Medicare Act
### (Decision is Contrary to Law)

83.     The Hospitals hereby incorporate by reference paragraphs 1 through 82 herein.

84.     The Ruling constitutes a significant departure from the Secretary's interpretation of the Medicare statute and the processing of appeals before the PRRB, therefore the Secretary was required to use notice-and-comment rulemaking under the APA, 5 U.S.C. §553.   The Secretary violated the Medicare Act and the APA by failing to use notice-and-comment rulemaking when issuing the requirements included in the Ruling.

85.     The Ruling purports to address the Hospitals' appeals over the *Allina II* issue through an order requiring the MACs to recalculate the Hospitals' DSH payments in accordance with as yet unknown payment criteria, thereby divesting the PRRB of jurisdiction over the appeals covered by the Ruling.  This is improper because the Ruling deprives the Hospitals of a hearing on the issue that they appealed.

86.     Moreover, it would be in excess of the Secretary's authority under the Medicare Act to make a determination that his decision to require MACs to take action consistent with the Ruling resolves the provider's dissatisfaction.  *See* 42 U.S.C. §1395oo(a) ("Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... if ... such provider ... is dissatisfied with a final determination ... as to the amount of total program

reimbursement due the provider ... for the period covered by such report.").   In this case, however, as more specifically stated herein, the Ruling does not satisfy the Hospitals' dissatisfaction with the final determination as to the amount of total program reimbursement due for the period covered by the cost reports at issue in this Complaint because the Hospitals are not being heard on the issue they appealed.

87.     The Medicare Act states that "no rule, requirement, or other statement of policy that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services shall take effect unless it is promulgated by the Secretary by regulation."   42 U.S.C. §1395hh(a)(2).

88.     The Medicare Act also requires the Secretary to publish in the Federal Register, a list of all manual instructions, interpretative rules, statements of policy, and guidelines of general applicability.   42 U.S.C. §1395hh(c).   The Freedom of Information Act (FOIA) similarly requires an agency to publish in the Federal Register statements of general policy and interpretations of general applicability.   5 U.S.C. §552(a)(1)(D).

89.     The policy contained in the Ruling falls within the publication requirements of 42 U.S.C. §1395hh(a)(2) and/or 1395hh(c), as well as 5 U.S.C. §552(a)(1)(D).   The Secretary's failure to adopt the Ruling using notice-and-comment rulemaking violates these requirements, and the Secretary is therefore precluded from applying the Ruling to the Hospitals.   42 U.S.C. §1395hh(e); 5 U.S.C. §552(a)(1); 5 U.S.C. §552(a)(2).   The Ruling is also unlawfully retroactive.

90.     As a result of the foregoing deficiencies, the Hospitals will suffer economic harm because their DSH payment will likely be lower than those to which they are entitled under the law as interpreted by this Court and the D.C. Circuit.

91.     Based on the foregoing, the Hospitals are entitled to an order declaring the Secretary's remand instructions in the Ruling to be unlawful and providing for other relief, and declaring the Proposed Rule unlawful to the extent it prejudices the Hospitals' statutory appeal rights.

**COUNT IV**

**Judicial Review Under the APA and the Medicare Act
(PRRB's Dismissal for Lack of Jurisdiction is Contrary to Law)**

92.     The Hospitals hereby incorporate by reference paragraphs 1 through 91 herein.

93.     The PRRB's decision that it lacked jurisdiction over the appeals of the DSH Part C Days issue filed from revised NPRs by Hospital Menonita (Cayey) (Provider No. 40-0013), for its cost reporting periods ending March 31, 2002, and March 31, 2003, and by Hospital Menonita (Aibonito) (Provider No. 40-0018), for its cost reporting period ending March 31, 2003, is invalid and should be set aside because it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, without observance of procedure required by law, and unsupported by substantial evidence, including for (but not limited to) the reasons set forth below.

94.     These hospitals appealed the DSH Part C Days issue from their original NPRs for the same fiscal periods and the PRRB found it had jurisdiction over the appeals of this issue from the original NPRs. *Id*. at 3.  The hospitals appealed the DSH Part C Days issue from their revised NPRs for the same fiscal periods and asked the PRRB to incorporate the appeal of the revised NPRs into the pending appeals of the original NPRs because doing so "did not introduce

any new issues" into the pending appeals.  The PRRB held that it does not have jurisdiction over the appeal of the DSH Part C Days issue from the revised NPRs because "there is no evidence" that DSH Part C Days "were adjusted in the respective RNPRs."  *Id*.  The PRRB's dismissal lacks a factual predicate because the hospitals' appeal of the DSH Part C Days issue from their revised NPRs was not the hospitals' initial appeal of the DSH Part C Days issue for the fiscal periods at issue.  Rather, the hospitals merely added the appeal of the DSH Part C Days issue from their revised NPRs into their currently-pending and jurisdictionally proper appeals of the DSH Part C Days issue from their original NPRs for the same fiscal period.  The PRRB's dismissal of these appeals of the DSH Part C Days issue from the revised NPRs for lack of jurisdiction was improper factually because they did not include any new issues.  The PRRB's jurisdictional decision is also invalid legally because it conflicts with the plain language of the appeals statute, 42 U.S.C. § 1395oo(a), and other authorities.

## COUNT V

### Mandamus

95.     The Hospitals hereby incorporate by reference paragraphs 1 through 94 herein.

96.     The Secretary has the non-discretionary duty to (a) reimburse the Hospitals fully at the amounts to which they are entitled under the law, (b) allow the Hospitals to exercise their appeal rights, and (c) otherwise comply with the law, including with regard to using notice and comment rulemaking.  The Hospitals are entitled to a writ of mandamus under 28 U.S.C. §1361, prohibiting the PRRB from remanding the Hospitals' appeals to the MAC under the Ruling and the Proposed Rule, and providing for other relief.

## COUNT V

### All Writs Act

97.     The Hospitals hereby incorporate by reference paragraphs 1 through 96 herein.

98.     The Secretary has violated the Medicare Act and APA by ordering the PRRB to remand the Hospitals' DSH appeals at issue to the applicable MACs.  Under the All Writs Act, 28 U.S.C. §1651(a):  "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  This Court, properly seized of jurisdiction, should issue an order prohibiting the PRRB from remanding the Hospitals' appeals to the MAC under the Ruling and the Proposed Rule, and providing for other relief.

## REQUEST FOR RELIEF

WHEREFORE, the Hospitals request:

1.     An order declaring CMS Ruling 1739-R invalid substantively and procedurally and setting it aside, including the provisions that declare that the PRRB lacks jurisdiction over, and requiring the PRRB to remand, the Hospitals' *Allina II* claims in their appeals, which the Hospitals brought for the purpose of having their DSH payments calculated correctly, in accordance with the *Allina* litigation and, thus, reinstating the Hospitals' PRRB appeals;

2.     An order declaring invalid and setting aside the final decisions of the PRRB dismissing and remanding to the MACs the Hospitals' appeals at issue herein;

3.     An order requiring the PRRB to reinstate the Hospitals' remanded appeals;

4.     An order declaring invalid and setting aside the PRRB's final decision dismissing for lack of jurisdiction the plaintiff-hospitals' appeals of the DSH Part C Days issue from revised NPRs for which the hospitals had currently pending and jurisdictionally-proper appeals of the DSH Part C Days issue from their initial NPRs for the same fiscal period;

5.     An order requiring the Secretary to cease and desist from applying the Ruling;

6.     Alternatively, the issuance of a writ of mandamus requiring the Secretary to (a) retroactively withdraw Ruling 1739-R and (b) reinstate the Hospitals' appeals before the PRRB;

7.      An order directing the Secretary to recalculate the Hospitals' DSH payments for the fiscal periods at issue in accordance with the *Allina* litigation and to make prompt payment of any additional amounts due the Hospitals plus interest calculated in accordance with 42 U.S.C. §1395oo(f)(2) and/or 42 U.S.C. §1395g(d);

8.      An order declaring the Proposed Rule unlawful to the extent it prejudices the Hospitals' statutory appeal rights;

9.      Costs of suit incurred by Hospitals, including reasonable attorneys' fees; and

10.     Such other and relief as the Court deems just and proper, including interest calculated in accordance with 42 U.S.C. §1395oo(f)(2) and/or 42 U.S.C. §1395g(d), on any payments made as a result of this action.

Dated:  May 24, 2021                        Respectfully submitted,

                                            _____/s/ Robert L. Roth_____
                                            Robert L. Roth (D.C. Bar No. 441803)
                                            Kelly A. Carroll (D.C. Bar No. 1018485)
                                            HOOPER LUNDY & BOOKMAN, P.C.
                                            401 9th Street, NW, Suite 550
                                            Washington, DC 20004
                                            Tel.: (202) 580-7700
                                            Fax: (202) 580-7719
                                            rroth@health-law.com
                                            kcarroll@health-law.com

                                            *Counsel for Plaintiffs*